UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

—————————————————X

Dina Mhmoud,                                    X

Plaintiff,                                      X

v.                                              X

Cheetah X Inc. (dba "Go X"),                    X

And Alexander Debelov,                          X

Defendants.                                     X

—————————————————X

FILED

JAN 07 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Case No.

**CV25      0198** DMR

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Dina Mhmoud ("Plaintiff") hereby files this Complaint against Defendants Cheetah X Inc. (dba "Go X") and Alexander Debelov (collectively, "Defendants") and alleges as follows:

### I.    INTRODUCTION

This action arises from Defendants' fraudulent investment scheme, breach of contract, and violations of federal and state securities laws. Defendants induced Plaintiff to invest $16,000 in a fleet of electric scooters, promising returns and the ability to withdraw funds at will. However, Defendants have systematically refused to honor withdrawal requests, unilaterally altered investment terms, and engaged in deceptive practices to retain Plaintiff's funds unlawfully.

### II.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal securities laws, including the Securities Act of 1933 and the Securities Exchange Act of 1934.

This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

1

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district and Defendants reside in this district.

"This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff, a citizen of New York, and Defendants, citizens of California."

"This Court has personal jurisdiction over Defendant Alexander Debelov because he resides in California and has purposefully availed himself of the privilege of conducting business in this forum. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)."

"Plaintiff's claims are timely under the applicable statute of limitations. The alleged violations occurred within two years of Plaintiff's discovery of the facts constituting the violation and within five years of the violation. See 28 U.S.C. § 1658(b)."

"While the agreement contains an arbitration clause, it is unenforceable due to Defendants' fraudulent conduct and material breach of the agreement. See Brown v. Wells Fargo Bank, N.A., 168 Cal. App. 4th 938, 958 (2008)."

### III.    PARTIES

Plaintiff Dina Mhmoud is an individual residing in Newburgh, New York.

Defendant Cheetah X Inc. (dba "Go X") is a corporation organized under the laws of California with its principal place of business at 338 Spear St., Suite 8c, San Francisco, CA 94105.

Defendant Alexander Debelov is the CEO of Cheetah X Inc. and resides in California.

### IV.    FACTUAL ALLEGATIONS

On October 5, 2022, Plaintiff entered into a GO X Sales Agreement 2.0 with Defendants, investing $16,000 for a fleet of 10 electric scooters.( Exhibit A- Original Agreement) & (Exhibit B- Bill of Sale)

The agreement promised Plaintiff the ability to withdraw funds at will, stating, "If at any point prior to recouping the original investment, the buyer wants to return their funds, then they will need to contact Go X and the company will refund their original purchase. Go X has 100% product guarantee and will return the funds for your purchase."

From September 3, 2023, to September 4, 2024, Plaintiff made numerous attempts to withdraw her funds, all of which were ignored or denied by Defendants.

2

On January 30, 2024, Defendants unilaterally reinvested $4,703.63 of Plaintiff's profits without her consent.

On May 2, 2024, Defendants attempted to unilaterally modify the investment structure, offering unauthorized loans or equity conversion options.

Despite repeated requests, Defendants have failed to provide clear and timely information about Plaintiff's investment status.

As of November 5, 2024, Plaintiff's investment had accrued profits totaling $7,763.03. (Exhibit C- Go X investment statement)

## V.    PRE-SUIT DEMAND

On November 5, 2024, Plaintiff Dina Mhmoud sent a demand letter to Defendants Alexander Debelov and Cheetah X Inc. (dba "Go X") at 338 Spear St., Suite 8c, San Francisco, CA 94105. A true and correct copy of this demand letter is attached. (Exhibit D- Demand Letter)

The demand letter was sent via USPS with tracking number 9510814191614310584243. (Exhibit E- USPS tracking Receipt)

USPS tracking confirms that the demand letter was received on November 7, 2024, and was signed for by R. Atkins. ( Exhibit F- USPS Delivery Confirmation)

In this demand letter, Plaintiff attempted to resolve this dispute amicably, requesting only the return of her original $16,000 investment, foregoing any additional fees or profits.

As of the date of this complaint, Defendants have failed to respond to Plaintiff's demand letter or make any attempt to return Plaintiff's investment.

Defendants' failure to respond to Plaintiff's reasonable demand has necessitated the filing of this complaint.

## VI.    CAUSES OF ACTION

    A) COUNT I: Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5

        a. Plaintiff incorporates by reference all preceding paragraphs.
        b. Defendants employed devices, schemes, and artifices to defraud Plaintiff in connection with the sale of securities.
        c. Defendants made untrue statements of material fact and omitted material facts necessary to make their statements not misleading.

3

      d. Defendants engaged in acts, practices, and a course of business that operated as a fraud upon Plaintiff.

      e. Plaintiff relied on Defendants' misrepresentations and omissions to her detriment.

As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages.

Legal Support: SEC v. W.J. Howey Co., 328 U.S. 293 (1946); SEC v. Schooler, 905 F.3d 1107 (9th Cir. 2018).

"Defendants' investment scheme constitutes an 'investment contract' under the Howey test, as Plaintiff invested money in a common enterprise with the expectation of profits solely from the efforts of others. See SEC v. Liu, 754 F. App'x 505, 506 (9th Cir. 2018)."

    B) COUNT II: Breach of Contract

      a. Plaintiff incorporates by reference all preceding paragraphs.

      b. Plaintiff and Defendants entered into a valid and enforceable contract.

      c. Plaintiff performed all of her obligations under the contract.

      d. Defendants breached the contract by failing to process Plaintiff's withdrawal requests and unilaterally altering the investment terms.

As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

Legal Support: Richman v. Hartley, 224 Cal. App. 4th 1182 (2014); Restatement (Second) of Contracts § 241.

"Defendants' failure to honor withdrawal requests constitutes a material breach, as it substantially impairs the value of the contract to Plaintiff. See Brown v. Grimes, 192 Cal. App. 4th 265, 277 (2011)."

    C) COUNT III: Fraud

      a. Plaintiff incorporates by reference all preceding paragraphs.

      b. Defendants made false representations regarding the nature of the investment and Plaintiff's ability to withdraw funds.

      c. Defendants knew these representations were false when made.

     d. Defendants intended to induce Plaintiff's reliance on these misrepresentations.

     e. Plaintiff justifiably relied on Defendants' misrepresentations to her detriment.

As a direct and proximate result of Defendants' fraud, Plaintiff has suffered damages.

Legal Support: Lazar v. Superior Court, 12 Cal. 4th 631 (1996).

"Defendants' misrepresentations regarding the ability to withdraw funds were material and induced Plaintiff to invest. See Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995)."

    D) COUNT IV: Violation of California Business and Professions Code § 17200

     a. Plaintiff incorporates by reference all preceding paragraphs.

     b. Defendants engaged in unfair, unlawful, and fraudulent business practices.

     c. These practices include, but are not limited to, failing to process withdrawal requests, unilaterally reinvesting funds, and attempting to modify investment terms without consent.

As a direct and proximate result of Defendants' unfair business practices, Plaintiff has suffered injury in fact and lost money or property.

Legal Support: Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999).

"Defendants' conduct violates the 'unfair' prong of the UCL as it offends established public policy and is immoral, unethical, oppressive, and unscrupulous. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999)."

    E) COUNT V: Conversion

     a. Plaintiff incorporates by reference all preceding paragraphs.

     b. Plaintiff had a right to possession of her invested funds and accrued profits.

5

     c. Defendants intentionally and substantially interfered with Plaintiff's property by refusing to return her funds and unilaterally reinvesting her profits.

     d. Plaintiff did not consent to this interference.

As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages.

Legal Support: Welco Electronics, Inc. v. Mora, 223 Cal. App. 4th 202 (2014); G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992).

"Defendants' unauthorized reinvestment of Plaintiff's profits constitutes conversion, as it was an act of dominion wrongfully exerted over Plaintiff's personal property. See Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015)."

VII.    DECLARATION OF DINA MHMOUD, pursuant to 28 U.S.C. § 1746:

I, Dina Mhmoud, declare under penalty of perjury that the following is true and correct

    A) I am the Plaintiff in this action and have personal knowledge of the facts stated in this declaration.

    B) I have prepared the foregoing Complaint and know its contents.

    C) The matters stated in the Complaint are true and correct to the best of my knowledge, information, and belief.

    D) On October 5, 2022, I entered into a GO X Sales Agreement 2.0 with Defendants, investing $16,000 for a fleet of 10 electric scooters.

    E) From September 3, 2023, to September 4, 2024, I made numerous attempts to withdraw my funds, all of which were ignored or denied by Defendants.

    F) On January 30, 2024, Defendants unilaterally reinvested $4,703.63 of my profits without my consent.

    G) On May 2, 2024, Defendants attempted to unilaterally modify the investment structure, offering unauthorized loans or equity conversion options.

    H) As of November 5, 2024, my investment had accrued profits totaling $7,763.03.

    I) On November 5, 2024, I sent a demand letter to Defendants, which was received on November 7, 2024, but Defendants have not responded to date.

VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

    A. Compensatory damages in the amount of $33,763.03;

B. Punitive damages under California Civil Code § 3294;

C. Treble damages under California Civil Code § 3345;

D. Injunctive relief ordering Defendants to cease their unlawful practices;

E. Pre-judgment and post-judgment interest; and

F. Such other and further relief as the Court deems just and proper.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

I Declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746. Executed on January 2nd 2025, in Newburgh, New York. Dina Mhmoud

Respectfully submitted,

Dina Mhmoud , Pro Se

Dated: January 2, 2025

7

# Exhibit A



## *SALES AGREEMENT FOR PURCHASE OF*
## *GO X SCOOTER FLEET*

Cheetah X Inc (dba "Go X")
1 Bluxome St Suite 303
San Francisco, California 94107

This is a Sales Agreement for a purchase of a Go X scooter made between the following Parties:

"Buyer":         _____

and

"Seller":     Cheetah X Inc (dba "Go X")

on:         _____

in which Buyer is purchasing a fleet of electric scooters from Cheetah X Inc (dba "Go X").

1.  **ITEMS PURCHASED.** Go X agrees to sell, and Buyer agrees to buy, the following products (the "Goods") in accordance with the terms and conditions of this Agreement. The payment will be made via credit or debit card on Go X's website on: www.goxapp.com/deposit, in the following amounts depending on the amount of scooters the buyer wishes to purchase on Go X 2.0 Investment Platform. The payment can also be made via check or wire transfer.

The following are the rates required for a fleet of scooters in Go X 2.0 Investment Platform:

| *Description* | *Quantity* | *Unit Price* | *Total Price* |
|---|---|---|---|
| A fleet of scooters to be rented in Go X markets using Go X software, partners and platform | 3 | $2,000 | $6,000.00 |
| A fleet of scooters to be rented in Go X markets using Go X software, partners and platform | 5 | $2,000 | $10,000.00 |
| A fleet of scooters to be rented in Go X markets using Go X software, partners and platform | 10 | $2,000 | $20,000.00 |
| A fleet of scooters to be rented in Go X markets using Go X software, partners and platform | 15 | $2,000 | $30,000.00 |



The Buyer is allowed to purchase up to 15 scooters on their account. The transaction amount will be reflected in Buyer's dashboard and Go X will provide receipt for the transaction.

**2. PRODUCT STANDARDS.** Scooters are in great condition, equipped with GPS and IOT in order be rentable at Go X's partner locations in Honolulu, New Orleans, Daytona Beach (FL), Clearwater (FL) & Sarasota (FL). The buyer is purchasing scooters that are available for immediate rent on Go X's platform.

**3. PAYMENT.** Payment shall be made via credit or debit card on Go X's website on: www.goxapp.com/signup, or via wire transfer upon executing this Agreement.

In addition to any other right or remedy provided by law, if Buyer fails to pay for the Goods when due, Go X has the option to treat such failure to pay as a material breach of this Agreement, and may cancel this Agreement and/or seek legal remedies as described below under "Remedies on Default."

**4. SCOOTER FLEET.** The buyer is purchasing a percent of the fleet and will be compensated accordingly. In other words, if there are 200 scooters in the market and the buyer purchases 20 scooter fleet, then the buyer's compensation will be calculated as 10% of the entire fleet. This way, the buyer will have the best chances of recouping funds on their original purchase and earning 100% in the best time possible as all of the repair, theft and rentals will be maximized in this arrangement.

Scooters will be rented by Go X in its major markets: Honolulu, New Orleans, Daytona Beach (FL), Clearwater (FL) and Sarasota (FL). The buyer will be paid for each rental that occurs in 70% / 30 % of the gross profit, whereas 70% will go towards the buyer and 30% will go to Go X. The gross profit is calculated by deducting gross revenue - partner payments - operations cost = gross profit.

Based on the data of Go X 1.0 platform from the initial 6 months, majority of investors doubled or were on track to double their funds within 6-11 months of their initial investment.

The terms of Go X 2.0 Investment are as following:
- The investor is purchasing Go X scooter fleet to 1.5x their initial investment
- They will earn profit every month on their scooter fleet up until the point when they will earn 55% of their initial invested capital
- At that point, if there's enough investor interest on the platform, then Go X will have the right to purchase the fleet back from the buyer and make the buyer whole on their entire investment.
- In other words, the buyer will be paid up the entire expected amount of return on their investment.
- The buyer will be paid monthly on their earnings and all data will be reflected on their dashboard
- Based on current data, the buyer should expect to 1.5x their investment within 6-12 months, however the time frame could be longer due to seasonality, COVID restrictions



and other unforeseen circumstances.

Go X will take care of all operations, provide the software solution, fix and deploy scooters at all partner locations. Go X will also retain a legal firm, PR firm and run online ads in order to increase rentability of scooters in Honolulu. All of this will help the buyer recoup and earn 50% interest on their purchase in the most reasonable time frame.

**5. PAYMENT OF TAXES.** Go X agrees to pay all taxes of every description, federal, state, and municipal, that arise as a result of this sale, excluding income taxes. The buyer is responsible for paying taxes as a result of earning profit from this investment individually.

**6. WARRANTIES.** Go X warrants that the Goods shall be free of substantive defects in material and workmanship.

GO X SHALL IN NO EVENT BE LIABLE FOR ANY INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY NATURE, EVEN IF GO X HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

If at any point prior to recouping the original investment, the buyer wants to return their funds, then they will need to contact Go X and the company will refund their original purchase. Go X has 100% product guarantee and will return the funds for your purchase.

In addition, Go X reserves the right at any point to return the funds for the original purchase to the buyer and to discontinue its relationship with the buyer. Go X reserves to do this at its own discretion and with minimal notice to the buyer.

**7. INSPECTION.** Buyer, upon purchase is assured that the purchased fleet of scooters is in good to excellent condition and will be rented out to buyers that same day. If Buyer, in good faith, determines that all or a portion of the Goods are non-conforming, Buyer may return the Goods to Go X at Go X's expense. Buyer must provide written notice to Go X of the reason for rejecting the Goods. Go X will have 30 days from the return of the Goods to remedy such defects under the terms of this Agreement.

**8. DEFAULT.** The occurrence of any of the following shall constitute a material default under this Agreement:

a. The failure to make a required payment when due.

b. The insolvency or bankruptcy of either party.

c. The subjection of any of either party's property to any levy, seizure, general assignment for the benefit of creditors, application or sale for or by any creditor or government agency.

d. The failure to make available or deliver the Goods in the time and manner provided for in this Agreement.



**9. REMEDIES ON DEFAULT.** In addition to any and all other rights a party may have available according to law, if a party defaults by failing to substantially perform any provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when due), the other party may terminate the Agreement by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have 45 days from the effective date of such notice to cure the default(s). Unless waived by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Agreement.

**10. FORCE MAJEURE.** If performance of this Agreement or any obligation under this Agreement is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, without limitation, acts of God, plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, or strikes, lock-outs, work stoppages. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

**11. DISPUTE RESOLUTION.** Any controversies or disputes arising out of or relating to this Contract shall be resolved by binding arbitration in accordance under the rules of the American Arbitration Association. The parties shall select a mutually acceptable arbitrator knowledgeable about issues relating to the subject matter of this Contract. The arbitrator(s) shall not have the authority to modify any provisions of this Contract or to award punitive damages. The arbitrator(s) shall have the power to issue mandatory orders and restraint orders in connection with the arbitration. The decision rendered by the arbitrator(s) shall be final and binding on the parties, and judgment may be entered in conformity with the decision in any court having jurisdiction. During the continuance of any arbitration proceeding, the parties shall continue to perform their respective obligations under this Contract.

**12. CONFIDENTIALITY.**

Both parties acknowledge that during the course of this Agreement, each may obtain confidential information regarding the other party's business. Both parties agree to treat all such information and the terms of this Agreement as confidential and to take all reasonable precautions against disclosure of such information to unauthorized third parties during and after the term of this Agreement. Upon request by an owner, all documents relating to the confidential information will be returned to such owner.



**13. NOTICE.** Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person, by e-mail or certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for.

**14. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**15. AMENDMENT.** This Agreement may be modified or amended if the amendment is made in writing and signed by both parties.

**16. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**17. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**18. APPLICABLE LAW.** This Agreement shall be governed by and construed according to the laws of the State of California without reference to its conflicts of law principles.

**19. SIGNATURES.** This Agreement shall be signed on behalf of Buyer and on behalf of Go X by Cheetah X Inc (dba "Go X"), CEO and effective as of the date first above written.



Buyer:

By : _____   Date: 10 / 05 / 2022

_____

Seller:
Cheetah X Inc (dba "Go X")

By: _____   Date: _____
      Alexander Debelov
      CEO

Doc ID: 3627309922e25e61934e3f04d00e033b57521fa

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | GO X Sales Agreement 2.0 |
| **FILE NAME** | Sales-Agreement-Go X (20).docx |
| **DOCUMENT ID** | 3627309922a25e619346c3f94d00a033b57521fa |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ↻ Signed |

## Document History

| | | |
|---|---|---|
| ↗ **SENT** | **10 / 05 / 2022** 00:12:16 UTC | Sent for signature to Dina (bebed325@yahoo.com) from alex@goxapp.com IP: 104.219.179.22 |
| ◉ **VIEWED** | **10 / 05 / 2022** 00:27:09 UTC | Viewed by Dina (bebed325@yahoo.com) IP: 96.248.52.91 |
| ⤴ **SIGNED** | **10 / 05 / 2022** 14:39:24 UTC | Signed by Dina (bebed325@yahoo.com) IP: 96.248.52.91 |
| ⊘ **COMPLETED** | **10 / 05 / 2022** 14:39:24 UTC | The document has been completed. |

# Exhibit B

# BILL OF SALE

**Seller**

**Name:** Cheetah X Inc (dba "Go X")

**E-mail:** we@goxapp.com

**Buyer**

Full Name: **Dina Mhmoud**
Phone Number (#): **8457642609**
Email: **dmhmoud@gmail.com**

---

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:** 4D6A-9785

**Location:** Daytona Beach
**Purchase price (per scooter):** $1600.00

---

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:** 4A46-9229

**Location:** Daytona Beach
**Purchase price (per scooter):** $1600.00

---

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:** 4F0F-94F0

**Location:** Sarasota
**Purchase price (per scooter):** $1600.00

---

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:** 4830-9937

**Location:** Daytona Beach
**Purchase price (per scooter):** $1600.00

---

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:** 4696-97C4

**Location:** Sarasota
**Purchase price (per scooter):** $1600.00

---

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:** 4769-B157

**Location:** Daytona Beach
**Purchase price (per scooter):** $1600.00

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:**  445B-91B8

**Location:** Honolulu
**Purchase price (per scooter):** $1600.00

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:**  4B61-A706

**Location:** Honolulu
**Purchase price (per scooter):** $1600.00

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:**  4CDD-9EFA

**Location:** Daytona Beach
**Purchase price (per scooter):** $1600.00

**Description of property:** Go X Scooter

**Scooter Model:** Okai

**Scooter SNs #:**  453E-BB93

**Location:** Daytona Beach
**Purchase price (per scooter):** $1600.00

The Seller hereby confirms that the information provided is true and accurate to the best of their knowledge. The Seller warrants that they are the legal owner of the electric scooter and have the right to sell it. The scooter is sold in "as is" condition, and the seller disclaims any further warranty of its condition or functionality.

The Buyer acknowledges receipt of the electric scooter as per the described condition and accepts the terms of the sale.

# Exhibit C



| Status | City | Scooters | Invested at | Invested | Profit Goal | Earned | Annual Return | % to Profit Goal | Bill of sale |
|--------|------|----------|-------------|----------|-------------|--------|---------------|------------------|--------------|
| active | Go X 2.0 | 0 | 1/30/2024 | $4,703.63 | $7,055.45 | $1,276.19 | 35.5% | 18% | |
| active | Go X 2.0 | 10 | 10/11/2022 | $16,000.00 | $8,000.00 | $6,486.84 | 19.6% | 81% | 🗎 |

# Exhibit D

Dina Mhmoud

20 Pierces Rd Apt #4

Newburgh, NY 12550

November 5, 2024


VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED


Alexander Debelov, CEO
Cheetah X Inc (dba "Go X")
338 Spear St., Suite 8c
San Francisco, CA 94105

Re: Demand for Immediate Refund and Damages – Dina Mhmoud

Dear Mr. Alexander Debelov:

I, Dina Mhmoud, am writing this demand letter regarding my investment in Go X scooters. On October 5, 2022, I entered into a GO X Sales Agreement 2.0 with Cheetah X Inc (dba "Go X"), investing $16,000 for a fleet of 10 scooters. I hereby demand the immediate refund of my entire investment of $16,000, plus all accrued profits totaling $7,763.03 and additional damages of $10,000, for a total amount of $33,763.03, pursuant to Section 6 of our agreement and applicable law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

<u>Statement of Facts</u>

❖ October 5, 2022: I signed the GO X Sales Agreement 2.0.

❖ October 11, 2022: My fleet became operational.

❖ September 3, 2023: I made my first documented attempt to withdraw funds, reporting issues with adding bank account information to the Go X platform. You instructed me to send bank information directly via email for manual addition by engineers.

- ❖ September 7, 2023: I followed up on this request.
- ❖ September 13, 2023: I followed up again and resent my account information. You assured me it was being processed.
- ❖ October 13, 2023: I followed up, stating that my bank information still hadn't been added and that I needed to withdraw funds.
- ❖ October 16, 2023: You included "Chris" in our email thread.
- ❖ October 20, 2023: I requested an update from you and "Chris" but received no response.
- ❖ Late October/Early November 2023: I successfully connected a different bank account to the platform.
- ❖ October 28, 2023: I informed you and Chris that I was still unable to withdraw funds, even with my new bank account information on file.
- ❖ December 5, 2023: I followed up on my withdrawal request, stating I had been trying for months to withdraw my balance.
- ❖ December 5, 2023: Khodor Salam responded, mentioning a switch in payment systems and proposed using PayPal as an interim solution. I provided him with my PayPal information.
- ❖ December 14, 2023: I informed Khodor that I had still not received my balance.
- ❖ December 26, 2023: I texted Khodor about not receiving my funds, even after providing my Pay Pal account details. He stated that investor payments were delayed and that I should have received an email about this (which I never did). Khodor asked you to send me that information.
- ❖ December 26, 2023: You, Alexander Debelov, sent an update email, mentioning delays in processing withdrawals and proposing alternative options (loan or equity conversion).
- ❖ January 9, 2024: I had a scheduled 15-minute investor call with Khodor Salam to discuss transferring earnings, with a stipulation of a partial payment.

- ❖ January 12, 2024: I followed up via email with you and Khodor but received no response.
- ❖ January 19, 2024: I followed up with you and Khodor again.
- ❖ January 22, 2024: Khodor emailed, copying you, stating that he hadn't followed up with the team regarding partial payments, and that a loan contract would be sent later in the week for review and signature. This never happened.
- ❖ January 30, 2024: My investor platform reflected a re-investment loan of $4,703.63 WITHOUT my consent.
- ❖ January 31, 2024: I emailed you and Khodor stating that I had NOT agreed to a reinvestment loan. Khodor replied, saying he was unable to get a partial payment, ignoring the fact that I did not agree to a re-investment loan.
- ❖ February 1, 2024: I emailed you and Khodor again, reiterating that I never consented to a re-investment loan, and that the loan on my investor platform showed a completely different investment. (The investment was NOT a 3-month loan at 25% as described in your email. Instead, it was for an indefinite period until the investment reached a profit goal of $7,055.45.)
- ❖ February 10, 2024: Without a response, I emailed you and Khodor again requesting a phone meeting.
- ❖ March 10, 2024: I emailed you and Khodor again asking for a response, reiterating that the re-investment was not what I had agreed to. You replied, asking me to explain the issues I was experiencing, and stated that you would speak with Khodor regarding my situation.
- ❖ March 27, 2024: I followed up again with you and Khodor but received no response.
- ❖ May 1, 2024: I followed up once more.
- ❖ May 2, 2024: I received an email from you regarding an M&A deal, stating that returning funds would take 2-3 months.
- ❖ May 5, 2024: I expressed frustration about not being able to withdraw any money for a year and a half.

- ❖ May 6, 2024: I attempted to schedule a call with you to discuss my concerns.
- ❖ May 12, 2024: I sent another follow-up email, stating that if we couldn't schedule a call that week, I would have to take a different approach.
- ❖ May 23, 2024: I mentioned considering involving my attorney if you didn't set up a phone meeting. I also noted that the number on your website wasn't in service.
- ❖ May 24, 2024: I had a phone meeting with Khodor demanding my money back. He stated that the company was going through an M&A deal that would close within two weeks, after which I would be able to withdraw funds. He again stated that he would speak with you regarding an immediate partial payment.
- ❖ May 31, 2024: After not hearing any updates, I wrote to you and Khodor asking to immediately withdraw my initial investment. I also texted Khodor.
- ❖ June 5, 2024: I texted Khodor asking for an ETA on my refund. He stated that you mentioned getting me a portion of my balance in the next few days to temporarily resolve the issue. I stated that I wanted a full refund by the end of the month. He said he would ensure you saw my emails.
- ❖ June 7, 2024: I wrote to you and Khodor again requesting a full refund by the end of the month to avoid legal action.
- ❖ June 17, 2024: Khodor responded, copying you on the email, stating that he had spoken with you about the refund and it would take 2-3 months to process due to resource constraints from the ongoing M&A deal. I replied, demanding a phone meeting.
- ❖ June 21, 2024: I had a phone call with Khodor, which was inconclusive. He later emailed me (copying you) explaining that he had spoken to you about our conversation and that I could schedule a phone meeting with you through that email. I responded asking for your phone number and when we could speak, but received no response.
- ❖ June 21 – September 16, 2024: I texted Khodor on multiple occasions without response.

❖ July 17, 2024: I emailed GO X support requesting a refund but received no response.

❖ September 4, 2024: I emailed you and Khodor demanding a return, once again with no response.

Throughout this period, I made multiple attempts to contact Go X representatives, including you and Khodor Salam, via email and text, and requested phone meetings to resolve the issue of withdrawing my funds. Despite these efforts, Go X failed to process my withdrawal requests or provide a clear resolution to the situation. Go X has repeatedly failed to honor its contractual obligations and has engaged in practices that violate both our agreement and potentially securities laws:

<u>Legal Basis for Demand</u>

Breach of Contract: Section 6 of the agreement states, "If at any point prior to recouping the original investment, the buyer wants to return their funds, then they will need to contact Go X and the company will refund their original purchase. Go X has 100% product guarantee and will return the funds for your purchase." Despite multiple requests since September 3, 2023, Go X has failed to process my refund. This constitutes a material breach of our agreement (see Richman v. Hartley, 224 Cal. App. 4th 1182 (2014); Restatement (Second) of Contracts § 241).

1. Failure to Make Timely Payments: Go X has consistently delayed payments and provided numerous excuses for non-payment. This pattern of delays constitutes unfair business practices under California Business and Professions Code § 17200 and violates the implied covenant of good faith and fair dealing (see Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342 (1992); Celador Int'l Ltd. V. Am. Broad. Cos., 499 F. App'x 721, 723 (9th Cir. 2012)).

2. Unauthorized Reinvestment: On January 30, 2024, Go X reinvested my profits of $4,703.63 without my consent, violating the terms of our original agreement and potentially securities laws. This action constitutes conversion under California law (see Welco Electronics, Inc. v. Mora, 223 Cal. App. 4th 202 (2014); G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992)).

3. Changing Investment Terms: On May 2, 2024, you sent an email attempting to unilaterally modify the investment structure, offering loans or equity conversion options not present in the original agreement. These actions violate securities regulations, including SEC Rule 10b-5, as they constitute an attempt to offer unregistered securities (see SEC v. W.J. Howey Co., 328 U.S. 293 (1946); SEC v. Rubera, 350 F.3d 1084 (9th Cir. 2003)).

4. Lack of Transparency: Despite multiple requests for information and updates between September 2023 and September 2024, Go X has failed to provide clear and timely information about my investment status. This violates the implied covenant of good faith and fair dealing inherent in all contracts under California law (see Carma Developers, supra; Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010)).

5. Potential Securities Law Violations: The structure of this investment and subsequent offers to convert to equity violate state and federal securities laws as Go X is not properly registered to offer such securities (see SEC v. W.J. Howey Co., supra; SEC v. Schooler, 905 F.3d 1107 (9th Cir. 2018)).

<u>Additional Damages</u>

Due to Go X's failure to process my withdrawal requests and refund my investment, I have suffered additional damages:

1. Lost Investment Opportunities: I have been unable to reinvest my funds in other opportunities, resulting in lost potential gains of approximately $5,000.

2. Emotional Distress: The prolonged uncertainty and repeated failed attempts to recover my funds have caused significant stress and anxiety, valued at $3,000.

3. Out-of-Pocket Expenses: I have incurred expenses related to communications, legal consultations, and time spent attempting to resolve this issue, estimated at $2,000.

## Demand

I hereby demand that Go X immediately refund my entire investment of $16,000, plus all accrued profits of $7,763.03, and additional damages of $10,000, for a total amount of $33,763.03, within thirty (30) business days of receipt of this letter. Failure to do so will result in my pursuit of all available legal remedies, including but not limited to:

1. Filing a lawsuit in the United States District Court for the Northern District of California for breach of contract, fraud, violations of securities laws, and unfair business practices under California Business and Professions Code § 17200.

2. Initiating arbitration proceedings as per Section 11 of our agreement.

3. Filing complaints with the Securities and Exchange Commission, the California Department of Financial Protection and Innovation, and other relevant regulatory bodies.

4. Seeking punitive damages under California Civil Code § 3294 for fraud and oppression.

5. Pursuing treble damages under California Civil Code § 3345 for unfair practices.

## Settlement Option

Notwithstanding the above demands, I am willing to offer a settlement option to resolve this matter expeditiously. If Go X pays the original investment amount of $16,000 within twenty (20) days of receipt of this letter, I agree to terminate our contract and consider the matter fully settled. This offer is made in the spirit of good faith and to provide an opportunity for a swift resolution.

Should Go X choose to accept this settlement option:

I.    The payment must be made in full by wire transfer or certified check within the specified 20-day period.

II.   Upon receipt of the $16,000, I will provide a written confirmation of contract termination and release of all claims related to this investment.

This settlement offer does not constitute an admission of wrongdoing by either party and is made solely for the purpose of resolving our dispute.

Please note that this settlement option is valid only for the 20-day period following receipt of this letter. If payment is not received within this timeframe, I will pursue the full amount demanded ($33,763.03) as outlined in the "Demand" section above.

Conclusion

Be advised that I reserve all rights and remedies available under the law. This letter is not intended as a full or complete statement of all relevant facts or applicable law, and nothing herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of my rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Enclosed with this letter are copies of all relevant documentation, including our original agreement, email correspondence, and financial statements, which support my claims and demands.

I await your prompt response and immediate action to resolve this matter.

Sincerely,

Dina Mhmoud

Enclosures:

1. GO X Sales Agreement 2.0 dated October 5, 2022
2. The Bill of Sale for 10 Scooters equaling $16,000
3. Financial statements showing accrued profits of $7,763.03

# Exhibit E

Go X (2)



**UNITED STATES POSTAL SERVICE.**

WFST NEWBURGH
457 BROADWAY
NEWL RGH, NY 12550-5345
(dJ0)275-8777

11/05/20. 1                              03:32 PM
---------   --  ------------------------
Product                Qty    Unit      Price
                              Price
----  --  ------------------------------
Priority Maile          1               $10.45
Flat Rate Env
    San F ancisco, CA 94105
    Flat  ate
    Expected Delivery Date
        Fri 11/08/2024
    Tr .      #:
        .iu 8l4l 9lbl 4310 5842 43
    Insr ance                           $0.00
        . to $100.00 included
    Signa.ure                           $4.55
    Confirm
 loial                                  $15.00

----------------   -----   ---------------
Grand Total:                            $15.00
-----------------   ------------------------
Credit Card Remit                       $15.00
    Card Name: VISA
    Account #: XXXXXXXXXXXXX691.
    Approval #: 06030D
    Transaction #: 358
    AID: A0000000031010         Chip
    AL: VISA CREDIT
    PIN: Not Required      CHASE VISA
------------------------------------------

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
            1-800-222-1811.

    Save this receipt as evidence of
Insurance. For information on filing an
            insurance claim go to
    https://www.usps.com/help/claims.htm
        or call 1-800-222-1811

        Preview your Mail
        Track your Packages
        Sign up for FREE @
    https.//informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
    Thank you for your business.

    Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



    or call 1-800-410-7420.

--------    -------------------------
UFN: 358132-0218
Receipt #: 840-51050274-1-8400395-2
Clerk: 55

Delivered nov 7.
Signed by R Atkins

Scanned with
CamScanner

# Exhibit F

10:27                                            ..ll LTE ⬜

🔒 tools.usps.com

ⓘ ALERT: EFFECTIVE NOVEMBER 29, 2024, I...    ⌄

# USPS Tracking®                    FAQs >

Tracking Number:                    Remove ✕

## 9510814191614310584243

⧉ Copy        🏃 Add to Informed Delivery

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 6:44 pm on November 7, 2024 in SAN FRANCISCO, CA 94105. The item was signed for by R ATKINS.

_____

**Get More Out of USPS Tracking:**

🔍 USPS Tracking Plus®

✓ **Delivered**
**Delivered, Front Desk/Reception/Mail Room**

SAN FRANCISCO, CA 94105
November 7, 2024, 6:44 pm

See All Tracking History

What Do USPS Tracking Statuses Mean?

_____

Text & Email Updates                    ⌄