DINA ADEL MHMOUD
Plaintiff, Pro Se
45 Erieview Plaza, Apt. #423
Cleveland, Ohio 44114
845-764-2609
dmhmoud@gmail.com

Plaintiff in Pro Per

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DINA ADEL MHMOUD,<br><br>Plaintiff,<br><br>v.<br><br>CHEETAH X INC. dba GO X, and ALEXANDER DEBELOV,<br><br>Defendants. | Case No. 4:25-cv-00198-JST<br>*Hon. Jon S. Tigar*<br><br>**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF No. 42) AND SUPPLEMENTAL BRIEF ON PERSONAL JURISDICTION OVER DEFENDANT ALEXANDER DEBELOV** |

## TABLE OF CONTENTS

**I. INTRODUCTION** ... 1
**II. STATEMENT OF ISSUES TO BE DECIDED** ... 3
**III. FACTUAL BACKGROUND** ... 3
A. The transaction ... 3
B. The Court's discovery order and how Defendants conducted that discovery ... 4
C. What Defendants verified under oath on July 16, 2026 ... 5
D. What Defendants told this Court fourteen days later ... 6
E. Defendants' sworn statements in three other proceedings — all produced by Defendants ... 6
F. Defendants' sworn deposition testimony — also produced by Defendants ... 8
G. Defendants' contemporaneous statements to regulators — also produced by Defendants ... 9
H. The evidence Defendants withheld ... 10
**IV. LEGAL STANDARD** ... 11
**V. THE COURT HAS GENERAL JURISDICTION OVER DEBELOV BECAUSE HE IS DOMICILED IN CALIFORNIA** ... 12
A. Domicile alone is sufficient, and Defendants never address it ... 12
B. Defendants' own verified answers supply the recognized indicia of California domicile ... 12
C. Debelov has sworn to California domicile in two other courts ... 14
D. Contacts are measured as of the filing date — and Defendants' own lead case says so ... 14
**VI. THE COURT HAS GENERAL JURISDICTION OVER CHEETAH X BECAUSE ITS PRINCIPAL PLACE OF BUSINESS IS IN SAN FRANCISCO** ... 15
A. Defendants state the governing test and then never apply it ... 15
B. Debelov has already told a federal court where the nerve center was ... 16
C. Defendants' own authenticated exhibit lists San Francisco as the principal address ... 16
D. Cheetah X's federal tax return gives the same address ... 17
E. Nine financial institutions listed San Francisco through 2023 ... 17
F. Go X rented office space in San Francisco in 2023 ... 17
G. California regulators identified the principal place of business in San Francisco ... 18
H. Registration, and its lapse, are beside the point ... 18
**VII. DEFENDANTS' PRIOR SWORN STATEMENTS ARE ADMISSIONS, AND JUDICIAL ESTOPPEL APPLIES IN THE ALTERNATIVE** ... 19

A. The statements are admissions of a party opponent ....19
B. Judicial estoppel provides an alternative ground ....19
**VIII. IN THE ALTERNATIVE, THE COURT HAS SPECIFIC JURISDICTION** ....20
A. Defendants apply the wrong framework ....20
B. Debelov purposefully directed the conduct at issue from California ....21
C. Plaintiff's claims arise out of and relate to that conduct ....24
D. Reasonableness is Defendants' burden, and they have not carried it ....24
**IX. THE MOTION IS UNSUPPORTED AS TO DEBELOV** ....25
**X. THE SUPPORTING DECLARATION CANNOT CARRY THE MOTION** ....26
**XI. DEFENDANTS WITHHELD THE JURISDICTIONAL EVIDENCE THE COURT ORDERED PRODUCED** ....27
**XII. CONCLUSION** ....28

## TABLE OF AUTHORITIES

**CASES**

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), overruled by Briskin v. Shopify, Inc., 135 F.4th 739 (9th Cir. 2025) (en banc) ....22

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ....27

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc)....21, 22

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017)....20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)....12, 24

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535 (9th Cir. 1986)....27

*Calder v. Jones*, 465 U.S. 783 (1984)....21

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ....11, 12, 15

*Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977)....11, 27

*Doe v. Deutsche Lufthansa Aktiengesellschaft*, 157 F.4th 1103 (9th Cir. 2025)....11

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021)....20, 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)....11

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001)....20

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ....11, 16

*Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079 (9th Cir. 2023) ....22

*King v. American Family Mutual Insurance Co.*, 632 F.3d 570 (9th Cir. 2011)....18

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44 (2d Cir. 1991)....14, 15

*Kokkoros v. Equinity Trust Co.*, No. 3:25-cv-01853-EMC (N.D. Cal. May 1, 2026) (Chen, J.), ECF No. 65 ....14, 15, 18

*Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986)....13, 15

*LG Chem, Ltd. v. Superior Court*, 80 Cal. App. 5th 348 (2022) ....20

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) ....20

*Milliken v. Meyer*, 311 U.S. 457 (1940) ....1, 2, 11, 12

*Morrill v. Scott Financial Corp.*, 873 F.3d 1136 (9th Cir. 2017) ....12, 21

*New Hampshire v. Maine*, 532 U.S. 742 (2001)....20

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ....11, 16, 18

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).... passim

*Walden v. Fiore*, 571 U.S. 277 (2014)....21

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)....20, 21

**STATUTES AND REGULATIONS**

15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5 ....................25
Cal. Code Civ. Proc. § 410.10 ....................11

**RULES**

Fed. R. Civ. P. 12(b)(2) ....................11, 26
Fed. R. Civ. P. 26(b)(5)(A) ....................27
Fed. R. Civ. P. 33(b)(3), (5) ....................19
Fed. R. Civ. P. 34(b)(2)(C) ....................10, 27
Fed. R. Civ. P. 37(a)(4) ....................27
Fed. R. Evid. 801(d)(2) ....................2, 19
N.D. Cal. Civil L.R. 37-1(a) ....................10
N.D. Cal. Civil L.R. 37-3 ....................4, 27

## I. INTRODUCTION

On July 16, 2026, Defendants served verified discovery responses. In them, Alexander Debelov swore under penalty of perjury that he "has a California driver's license, is a California Registered Voter files taxes in California," and has "a residential tenancy in California at 338 Spear St., Unit 8C." He also swore that his "legal address has been in California since 2011." (Mhmoud Decl. ¶ 6; Exs. 1–4.)

Fourteen days later, Defendants filed this motion, supported by a declaration from the same man, also under penalty of perjury. That declaration tells this Court that "Defendant Debelov also lives in Florida" and that Cheetah X has no "offices, employees, scooters or bank accounts in California." Of the five California facts Debelov verified on July 16, the declaration repeats none but the tenancy, and that one only in recharacterized form — as an apartment he leases, "which accounts for the California address that appears on certain records."

The path to this motion matters. Defendants first asked Plaintiff to delete her California-focused discovery requests as overbroad; she declined partially and served them as written. (Mhmoud Decl. ¶ 4.) Defendants then answered those requests and admitted the California facts. Two weeks later they asked the Court to find no California contacts at all. The motion fails for four independent reasons.

**First, the Court has general jurisdiction over Debelov because he is domiciled in California.** For an individual, domicile alone is enough. *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Defendants' verified answers supply the standard indicia — a California driver's license, California voter registration, California tax filings, and a California residential tenancy, all in the present tense. Debelov has sworn to California domicile twice more, in the Southern District of

Florida and in Hawai'i state court. (Exs. 5–6.) Defendants' motion never uses the word "domicile," never cites *Milliken*, and applies the corporate "essentially at home" test to a natural person.

**Second, the Court has general jurisdiction over Cheetah X because its principal place of business is in San Francisco.** Defendants themselves state that general jurisdiction is "paradigmatically appropriate" in the state of incorporation "or principal place of business." (ECF 42 at 11.) They never apply the second half of that rule, and never identify Cheetah X's principal place of business anywhere in twenty pages. The record identifies it for them: Defendants' own authenticated Exhibit B lists 338 Spear Street, Unit 8C as Cheetah X's **Principal Address** (Ex. 7); Cheetah X's 2020 federal tax return, signed by Debelov as CEO, gives that same address (Ex. 8 at CX_000003); and Debelov's supplemental SEC declaration swears that "all nine financial institutions listed San Francisco, California as the company address" during "2021-2023" (Ex. 9 ¶¶ 5–6).

**Third, Defendants' contrary sworn statements are admissions of a party opponent** under Federal Rule of Evidence 801(d)(2), and they undercut the declaration the motion depends on. In the alternative, judicial estoppel applies.

**Fourth, specific jurisdiction exists as an independent ground.** Defendants rely on cases about distant manufacturers whose products happened to reach the forum. This case is the reverse: on Defendants' own evidence, Debelov ran the company from California during the relevant period. He testified that during 2022 and 2023, as CEO, he spent "one third of the time or so in San Francisco," worked Go X business from his San Francisco apartment and from a co-working space Go X rented there in 2023, and that the Go X "invest page" "went up under my supervision." (Ex. 10.) The Sales Agreement Plaintiff signed names the seller on its face as a San Francisco company. (Ex. 11.)

Finally, Defendants' own lead authority defeats them: it holds that jurisdictional contacts are measured as of the date the complaint was filed. Measured as of January 7, 2025, the evidence supports every fact above. Plaintiff's burden is only a prima facie showing, and conflicts between the parties' affidavits must be resolved in her favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The motion should be denied.

## II. STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), the issues to be decided are:

1. Whether the Court has general personal jurisdiction over Cheetah X Inc.
2. Whether, in the alternative, the Court has specific personal jurisdiction over Cheetah X Inc.
3. Whether the Court has personal jurisdiction over Alexander Debelov, general or specific.
4. Whether, in the alternative, the Court should defer ruling on the motion and order Defendants to complete the jurisdictional discovery authorized by ECF No. 37.

## III. FACTUAL BACKGROUND

### A. The transaction

On October 5, 2022, Plaintiff paid Cheetah X Inc. $16,000 under a "GO X Sales Agreement 2.0" for a fleet of ten electric scooters. The agreement names the seller as "Cheetah X Inc (dba 'Go X'), 1 Bluxome St Suite 303, San Francisco, California 94107." (Mhmoud Decl. ¶ 16; Ex. 11; ECF No. 1, Ex. A.) Cheetah X kept possession of the scooters, placed them at commercial venues, ran all rentals through its own mobile application, and paid Plaintiff a share of the proceeds — under Section 4, "70% / 30 %," with 70% to the buyer. The agreement told buyers they were "purchasing Go X scooter fleet to 1.5x their initial investment," and Section 6 promised a "100% product guarantee." Plaintiff never possessed or maintained any scooter.

From September 2023 through September 2024, Cheetah X refused Plaintiff's requests to withdraw her accrued balance. She sent a demand letter on November 5, 2024 and filed this action on January 7, 2025. On July 7, 2025, Defendants sent her $750 by PayPal. (Mhmoud Decl. ¶ 17.)

**B. The Court's discovery order and how Defendants conducted that discovery**

On March 5, 2026, this Court struck the prior motion to dismiss as to Cheetah X, held service proper, and left personal jurisdiction over Debelov undecided. (ECF No. 34.) In footnote 3 the Court noted that Plaintiff's California evidence was not then in the record. The accompanying declaration places it there, and it comes from Defendants' own production.

On April 17, 2026, the Court authorized jurisdictional discovery — five requests for production and ten interrogatories. Under the deadlines calculated from that order, discovery closed July 16, 2026, Defendants' motion was due July 30, 2026, and this combined brief is due August 20, 2026. (ECF No. 37.)

Plaintiff served her requests. Defendants objected that they were overbroad and returned them with a markup deleting some California-focused ones; Plaintiff declined the markup and served her requests as written. Responses were originally due June 18, 2026; at Defendants' request, Plaintiff granted a 28-day extension to July 16, 2026 — the last day of the discovery period. (Mhmoud Decl. ¶¶ 3–4.) At 9:59 p.m. that night, Defendants served written responses bearing the notation "Document production will follow"; the documents arrived later. (Mhmoud Decl. ¶ 5; Ex. 12.) Plaintiff therefore had no time to review the production, confer, and seek relief before the Rule 37-3 window closed on July 23, 2026.

**C. What Defendants verified under oath on July 16, 2026**

Debelov personally verified all four sets of responses under penalty of perjury, in a single DocuSign envelope (6F7523AD6F35441), each executed at New York City on July 16, 2026. (Mhmoud Decl. ¶ 6; Exs. 1–4.) In those verified responses Defendants stated, among other things:

- Debelov "has a California driver's license, is a California Registered Voter files taxes in California";
- Debelov has "a residential tenancy in California at 338 Spear St., Unit 8C (renter, not owner)"; his "legal address has been in California since 2011"; and "Since Mid-2022 Mr. Debelov maintains a tenancy at the Spear address but is gone much of the time in Florida, travelling internationally, and throughout the U.S.";
- His Florida housing consists of a Miami lease in his own name "from 2021 – mid-2022," after which he "was added to his mother's residential lease in Hallandale Beach, Florida";
- "This address was Cheetah X's San Fransico's [sic] office. We had 2 addresses at 1 Bluxome St #411 and #303";
- Debelov "did have direct email exchanges with Plaintiff at material points," including one he sent himself on May 5–6, 2024 titled "Update On your 'scooters' series," and three further exchanges escalated or forwarded to him;
- "Plaintiff is 1 of approximately 280 in the owner program; Approximately 10 are California-affiliated, and Plaintiff is not one of them."

Defendants also verified a blanket assertion that "Any California addresses appearing on filings, signature blocks, or third-party records after 2020 are stale or mailing-only," without identifying a single one of the eight documents Plaintiff had named. Their own production undercuts that characterization: it contains four January 2020 emails whose signature block gives

Debelov's business address as "1 Bluxome St., Suite 411 | SF, CA 94107." (Ex. 13 (CX_000332–336).) They gave figures for Debelov's days of physical presence in California only through the first quarter of 2022 — "2020: ~130 days. Q1 2021: ~7 days. Q2–Q4 2021: ~14 days. Q1 2022: minimal" — and none for any later period, including the quarters of Plaintiff's purchase and of filing. Both corporate verifications also describe Cheetah X as "a corporation organized and existing under the laws of California," though the motion says Delaware; Plaintiff accepts Delaware incorporation and notes the discrepancy only because Defendants ask the Court to credit their sworn descriptions of their own corporate presence.

**D. What Defendants told this Court fourteen days later**

The declaration filed July 30, 2026 in support of the motion (ECF No. 42-1) states that Cheetah X has "no offices, employees, scooters or bank accounts in California" (¶ 6), and that "I lease an apartment in San Francisco, California, which accounts for the California address that appears on certain records" (¶ 12). The motion states that "Defendant Debelov also lives in Florida" (ECF 42 at 18) and that Defendants "did not have any conduct or activities in California" (*id.* at 19). Four of the five California facts verified two weeks earlier appear nowhere in the declaration: the driver's license, the voter registration, the tax filings, and the 2011 legal-address date. The fifth - the California tenancy - appears only in the recharacterized form quoted above. Nothing in the declaration tells the Court that the same man swore, fourteen days earlier, that he is a registered California voter who files California taxes and holds a California driver's license.

**E. Defendants' sworn statements in three other proceedings — all produced by Defendants**

Defendants' own production contains the following, produced under Defendants' own topical divider labeled "Alex Debelov Personal Domicile." (Ex. 14 (CX_000115).)

**1. The SEC declaration (October 3, 2025).** In *SEC v. Cheetah X, Debelov & Salam*, No. 1:25-cv-23002-BB (S.D. Fla.), Debelov filed a declaration under the heading "Residence and Domicile." Paragraph 3 reads: "I live in San Francisco, California where I maintain my driver's license, tax filings, and voter registration with my primary residence at 338 Spear St., Unit 8C." Paragraph 4 describes his 2021 Miami presence as "temporarily… part-time personal residence only." Footnote 1 states that he had testified "that Miami was the location of Go X's headquarters," that he "misspoke," and that he "intended to state that Florida is the location of Go X's headquarters, not Miami," identifying Daytona Beach. (Ex. 5 ¶¶ 3–4 & n.1 (CX_000116–117).)

**2. The supplemental SEC declaration (docketed January 14, 2026).** Paragraphs 5 and 6 state that "Go X maintained accounts at nine financial institutions," and that "During the platform's active period (2021-2023), all nine financial institutions listed San Francisco, California as the company address." Paragraphs 2 through 4 state that Bank of America statements for two accounts showed a San Francisco address through September 2024, changing to Florida only in October 2024. Paragraph 7 states that his SEC testimony was taken by "SEC staff from the San Francisco Regional Office," and paragraph 15 that "As CEO, my location was 'headquarters' in the sense that executive decisions were made wherever I was." (Ex. 9 ¶¶ 2–7, 15 (CX_000212–215).)

**3. The Hawai'i declaration (October 29, 2025).** In *D.B. Hawaii, Inc. dba Polynesian Hostel v. Cheetah X & Debelov*, No. 1CCV-24-0000534 KTM, Debelov declared: "Since June, 2011, I have resided continuously at… 338 Spear St Unit 8C," attaching a photograph of his California driver's license. (Ex. 6 (CX_000113–114).)

**F. Defendants' sworn deposition testimony — also produced by Defendants**

Defendants produced 246 Bates-numbered pages of Debelov's SEC investigative testimony, taken October 11, 2024 in SEC File No. SF-04502-A — the San Francisco Regional Office file. (Mhmoud Decl. ¶ 8; Ex. 10 (tr. 335–339, 366–370, 400, 445, 451–452, 456, 462–463).) He testified:

- "I would say I spend, like, one third of the time or so in San Francisco, a third of the time traveling to different markets and then, a third of time in Florida." Asked "you were the CEO of Go X during all of those periods, right? During 2022 and 2023, right?" — "Yes, sir."
- Asked whether "in 2022 at times you worked from your apartment in San Francisco" — "If I was in the city, of course, yeah." Asked whether 2023 was the same — "the same, yeah."
- Asked "did Go X rent co-working space in San Francisco in 2022 or 2023?" — "In 2022, no. 2023, yes. Yeah, for sure." Asked whether he worked from that space — "Yes, of course."
- "I've had this apartment for, like, about 11 [years] here in San Francisco. I haven't changed it"; the Miami apartment is "where my parents stay."
- Asked whether, as CEO, he had reviewed the Go X website "to manage your business" — "Yes. I have logged into our website… I occasionally log in to monitor my business." Asked about the invest page — "Invest page went up under my supervision… Did I monitor it? Yeah, sure."
- Asked "Does Go X have a bank account in San Francisco?" — "We have a Bank of America account… originally when we opened this bank account it was opened

initially in San Francisco, but then when we moved to Miami we updated our records and changed our address to Florida."

Two answers sit uneasily with Debelov's own later filings. He testified in October 2024 that the Bank of America address had already been changed to Florida; his supplemental declaration places that change in October 2024, the month of the testimony. He also testified that "[o]ur latest headquarters is in Miami"; he later told the Florida court that he "misspoke" and had meant Florida, identifying Daytona Beach.

**G. Defendants' contemporaneous statements to regulators — also produced by Defendants**

- **California DFPI, September 21, 2024.** Defendants' then-counsel wrote to DFPI staff: "One officer spends approximately 40% of his time in California." That was three and a half months before this suit was filed. (Ex. 15 (CX_000237–238).)
- **California DFPI, November 14, 2024.** The same counsel wrote that "Go X is headquartered in Miami, Florida," and that "All company bank accounts are maintained in Florida." (Ex. 16 (CX_000239–244).)
- **Connecticut Department of Banking, July 17, 2024**, addressed its letter to "Alexander Debelov… Cheetah X Inc, 338 Spear Street - Suite 8C, San Francisco, California 94105" (Ex. 17 (CX_000245–246)); and the California DFPI Desist and Refrain Order of July 3, 2025, ¶ 2, identifies Cheetah X's principal place of business as that same address (Mhmoud Decl. ¶ 9; Ex. 18 ¶ 2).
- **SFMTA Notice of Nonpayment, March 6, 2020**, addressed to "Alexander Debelov, Cheetah X, Inc. dba Go X, 1 Bluxome St., Suite 411, San Francisco, CA 94107," states that Cheetah X "owes the City and County of San Francisco $220,550" (Ex. 19 (CX_000102–103)); separately, the San Francisco City Attorney's letter of January 7,

2020 to Go X's counsel states that "Go X owes… a debt of $233,800.00 for unpaid citations" on "over 540 citations" (Ex. 20 (CX_000020–21)).

Plaintiff offers the 2020 documents not as contacts existing on the filing date, but as corroboration that Cheetah X's operations were physically centered in San Francisco — as Defendants' verified answers confirm.

**H. The evidence Defendants withheld**

On July 28, 2026, Plaintiff wrote to Defendants' counsel under Civil Local Rule 37-1(a), identifying seven categories of missing documents and two items of missing information and asking Defendants to state for each whether responsive documents exist and were being withheld: the 2021–2025 tax filings; the 338 Spear Street tenancy file; the 1 Bluxome Suite 303 lease; SEC testimony pages 1 through 223; the complete DFPI file; a privilege log; and the four documents this Court itself identified in ECF No. 34, including the May 2, 2024 email from alex@goxapp.com bearing a San Francisco address. (Mhmoud Decl. ¶¶ 10–11; Ex. 21.)

On August 3, 2026, Diane Jurdi of Gordon Rees replied: "We are willing to work with you and cooperate as much as possible. As you know, our Motion was due last week so that was the focus. We will now review the below correspondence… although we sent you about 582 pages of documents covering the majority of what you requested." (Mhmoud Decl. ¶ 12; Ex. 22.)

Plaintiff followed up on August 14, 2026. Defendants never responded, have produced nothing further, and have never served a Rule 34(b)(2)(C) statement or a privilege log. (Mhmoud Decl. ¶ 13; Ex. 23.) Of the 582 Bates-numbered pages produced (CX_000001 through CX_000582), 246 are a single incomplete volume of deposition transcript. (Mhmoud Decl. ¶¶ 7–8.)

## IV. LEGAL STANDARD

On a Rule 12(b)(2) motion decided on written materials, the plaintiff need only make a **prima facie** showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Uncontroverted allegations are taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 — a rule Defendants never mention. California's long-arm statute reaches as far as due process allows. Cal. Code Civ. Proc. § 410.10.

General jurisdiction exists where the defendant is "essentially at home" in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see Doe v. Deutsche Lufthansa Aktiengesellschaft*, 157 F.4th 1103, 1110 (9th Cir. 2025) ("A court may exercise general jurisdiction only when a defendant is essentially at home in the State."). For a natural person, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). For a corporation, the "paradigmatic locations" are "its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015); *see Daimler*, 571 U.S. at 137, 139 n.20. The two are alternatives, not requirements: a corporation incorporated in Delaware is still at home where it is principally based.

"Principal place of business" carries its settled meaning: the "nerve center," or "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). *Hertz* arose under the diversity statute rather than the Due Process Clause; Plaintiff cites it only for the definition of that term.

The three-part specific-jurisdiction test appears at *Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden on the first two prongs only; if she carries it, the burden shifts to

Defendants to "present a compelling case" that jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). Where general jurisdiction exists, the claims need bear no relationship to the forum — which disposes of most of Defendants' brief, since it argues only that Plaintiff's claims do not arise from California conduct.

## V. THE COURT HAS GENERAL JURISDICTION OVER DEBELOV BECAUSE HE IS DOMICILED IN CALIFORNIA

### A. Domicile alone is sufficient, and Defendants never address it

For a natural person, domicile decides the question. "Domicile in the state is alone sufficient to bring an absent defendant within the reach of the state's jurisdiction…" *Milliken*, 311 U.S. at 463. *Daimler* reaffirmed it: the paradigm forum for general jurisdiction over an individual "is the individual's domicile." 571 U.S. at 137.

Defendants' motion never cites *Milliken* and never uses the word "domicile." Its general-jurisdiction section is captioned as to "CHEETAH X INC." and states that general jurisdiction "exists only where the corporation's" connections make it "essentially at home." (ECF 42 at 10-11.) Defendants apply that corporate test to Debelov, reasoning that he is not at home in California because Cheetah X "was formed in Delaware and does the majority of its business in Florida." (*Id.* at 11.)

That is a category error. Debelov is not a corporation, and where Cheetah X was incorporated says nothing about where he is domiciled.

### B. Defendants' own verified answers supply the recognized indicia of California domicile

Domicile is residence plus intent to remain. The Ninth Circuit identifies the facts that show it: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in

unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

Defendants' verified answers of July 16, 2026, quoted above at Section III.C, establish four of those factors in the present tense: a California driver's license, California voter registration, California tax filings, and a California residential tenancy at 338 Spear Street. (Exs. 1–4.) None of those is a "mailing address."

Defendants add that Debelov's "legal address has been in California since 2011," and that "Since Mid-2022 Mr. Debelov maintains a tenancy at the Spear address but is gone much of the time in Florida, travelling internationally, and throughout the U.S." Plaintiff takes those answers as given: they establish a California tenancy beginning no later than mid-2022 — before her October 2022 purchase — and continuing through the July 2026 verification. Debelov's Hawai'i declaration goes further, swearing he has "resided continuously" there since June 2011. (Ex. 6.) To the extent the accounts differ, the conflict is Defendants' own. *Schwarzenegger*, 374 F.3d at 800.

The qualifier that Debelov "is gone much of the time" does not help Defendants. Domicile is not lost by absence: once established, a domicile is presumed to continue until a new one is acquired, and the party asserting a change bears the burden of coming forward with evidence of it, while the party invoking jurisdiction retains the burden of proof. *Lew*, 797 F.2d at 750–51. Defendants have come forward with no such evidence. They identify no Florida driver's license, voter registration, tax filing, or lease in Debelov's own name after mid-2022. On their own verified account, his Miami lease ran only "from 2021 – mid-2022," after which he "was added to his mother's residential lease in Hallandale Beach, Florida" — being a guest on a parent's lease is not a change of domicile.

The declaration filed fourteen days later omits four of these facts and recharacterizes the fifth. (ECF 42-1 ¶ 12.) That conflict, too, must be resolved in Plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800.

**C. Debelov has sworn to California domicile in two other courts**

Debelov's own sworn filings — produced by Defendants under their own divider labeled "Alex Debelov Personal Domicile" — remove any doubt. In the Southern District of Florida, under a heading he titled "Residence and Domicile," he declared: "I live in San Francisco, California where I maintain my driver's license, tax filings, and voter registration with my primary residence at 338 Spear St., Unit 8C." (Ex. 5 ¶ 3.) In Hawai'i state court he declared: "Since June, 2011, I have resided continuously at… 338 Spear St Unit 8C," attaching his California driver's license. (Ex. 6.)

He also testified under oath in October 2024 that the San Francisco apartment is one he has held "for, like, about 11 [years]" and has "not changed," and that the Florida apartment is "where my parents stay" — the opposite of what this Court has been told, that "Defendant Debelov also lives in Florida." (ECF 42 at 18; Ex. 10.)

**D. Contacts are measured as of the filing date — and Defendants' own lead case says so**

Defendants devote their first and longest argument section to *Kokkoros v. Equinity Trust Co.*, No. 3:25-cv-01853-EMC (N.D. Cal. May 1, 2026) (Chen, J.), ECF No. 65 — an unpublished district-court order, and therefore persuasive rather than precedential, but Defendants' own lead authority. (ECF 42 at 8–10.) That order dismissed third-party defendant Fifth Third Bank on the rule that jurisdictional contacts are assessed as of the time the complaint was filed: "[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed." *Id.*, slip op. at 12 (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d

44, 52 (2d Cir. 1991)). That is why the bank's post-filing acquisition of California branches could not create jurisdiction.

Plaintiff accepts that rule. *Klinghoffer* is persuasive rather than binding here, but it is the rule Defendants themselves ask this Court to apply, and the Ninth Circuit applies the same filing-date principle in the closely related diversity-domicile context. *See Lew*, 797 F.2d at 750. Defendants cannot invoke the rule and then decline it when it is applied to them.

Applied here, the rule defeats the motion. As of January 7, 2025, on Defendants' own evidence, Debelov held a California driver's license, was a registered California voter, filed California taxes, and held a residential tenancy at 338 Spear Street; the Secretary of State listed that address as Cheetah X's principal address; Cheetah X's Bank of America statements had carried a San Francisco address through September 2024; three months earlier Debelov had testified that he spent about a third of his time in San Francisco; and three and a half months earlier Defendants' own counsel had told California regulators that "[o]ne officer spends approximately 40% of his time in California." (Exs. 1–4, 7, 9–10, 15.) *Kokkoros* also shows what Defendants have not shown: there the bank's California presence was peripheral — headquartered in Ohio, no retail services in California before filing.

## VI. THE COURT HAS GENERAL JURISDICTION OVER CHEETAH X BECAUSE ITS PRINCIPAL PLACE OF BUSINESS IS IN SAN FRANCISCO

### A. Defendants state the governing test and then never apply it

Defendants correctly state that general jurisdiction is "'paradigmatically appropriate' only in the state of incorporation or principal place of business," citing *Daimler*, 571 U.S. at 139 n.20. (ECF 42 at 11.) Their brief then analyzes only the first half of that test: it never identifies where Cheetah X's principal place of business is and never applies the nerve-center standard. It asserts only that Cheetah X "does the majority of its business in Florida" — a statement about where

operations are largest, not about where the corporation is directed. A principal place of business is where officers "direct, control, and coordinate" the corporation's activities, *Hertz*, 559 U.S. at 92-93; and because the two paradigms are alternatives, *Ranza*, 793 F.3d at 1069, Cheetah X's Delaware incorporation answers only half the question.

**B. Debelov has already told a federal court where the nerve center was**

Debelov's supplemental declaration in the SEC action states, at paragraph 15: "As CEO, my location was 'headquarters' in the sense that executive decisions were made wherever I was." (Ex. 9 ¶ 15.) That is a sworn statement that Cheetah X's nerve center was wherever Debelov was — and Debelov has sworn that he lives in San Francisco, and that during 2022 and 2023, as CEO, he spent "one third of the time or so in San Francisco," working from his apartment there and from a co-working space Go X rented there. (Exs. 5, 10.) On Defendants' own account, San Francisco was the place where the chief executive most consistently sat and worked during the period of Plaintiff's purchase.

**C. Defendants' own authenticated exhibit lists San Francisco as the principal address**

Defendants attached and authenticated the California Secretary of State record for Cheetah X as Exhibit B to the Debelov declaration. It lists 338 Spear St., Unit 8C, San Francisco, CA 94105 as Cheetah X's Principal Address — and separately as its Mailing Address. (Mhmoud Decl. ¶ 9; Ex. 7.) They dispose of it in one sentence: "The fact that CHEETAH X INC. or Mr. Debelov have a legal mailing address in California does not change this fact." (ECF 42 at 11.) But the exhibit lists 338 Spear Street in a field labeled Principal Address, in addition to a separate mailing-address field giving the same location. That sentence mischaracterizes Defendants' own exhibit and is supported by no declaration and no citation.

**D. Cheetah X's federal tax return gives the same address**

Defendants' production contains Cheetah X's 2020 federal Form 1120, which gives the corporation's address as "338 SPEAR ST 8C / SAN FRANCISCO, CA 94105," is signed "ALEX DEBELOV, CEO" on September 13, 2021, was prepared by VPTAX, Inc. of Burlingame, California, and leaves the address-change box unchecked. Schedule G identifies Debelov as holding 69.298% of the voting stock. (Ex. 8 at CX_000003, CX_000008.) Cheetah X told the Internal Revenue Service it was in San Francisco, and Debelov signed that return.

**E. Nine financial institutions listed San Francisco through 2023**

Debelov's supplemental SEC declaration swears that "During the platform's active period (2021-2023), all nine financial institutions listed San Francisco, California as the company address," and that Bank of America statements for two accounts carried a San Francisco address through September 2024, changing to Florida only in October 2024. (Ex. 9 ¶¶ 2–6.)

Paragraph 6 of the declaration filed here states that Cheetah X has "no… bank accounts in California." (ECF 42-1 ¶ 6.) That statement is present tense and says nothing about the period that matters: Plaintiff's purchase was October 5, 2022, inside the 2021-2023 window Debelov himself identified, and suit was filed January 7, 2025, about three months after the San Francisco address was removed. Counsel separately told the California DFPI on November 14, 2024 that "All company bank accounts are maintained in Florida" (Ex. 16) — a statement difficult to square with Debelov's own later declaration.

**F. Go X rented office space in San Francisco in 2023**

Paragraph 6 also states that Cheetah X has "no offices… in California." That statement is present tense and does not address 2023. Debelov testified in October 2024 (Ex. 10):

> **Q:** did Go X rent co-working space in San Francisco in 2022 or 2023?
> **A:** In 2022, no. 2023, yes. Yeah, for sure.

> **Q:** And you sometimes worked from that space… in San Francisco in 2023; is that correct?
> **A:** Yes, of course.

### G. California regulators identified the principal place of business in San Francisco

Defendants' verified answers also state that 1 Bluxome Street "was Cheetah X's San Fransico's [sic] office," with two suites. (Exs. 1–4.) Their assertion that "Cheetah X Inc.'s California operations ended in 2020 before Plaintiff's October 2022 purchase" (ECF 42 at 6) is contradicted by their own client's testimony about 2023 office space.

The California DFPI's Desist and Refrain Order of July 3, 2025 identifies, at paragraph 2, Cheetah X's principal place of business as 338 Spear Street, Unit 8C, San Francisco. (Ex. 18 ¶ 2.) The Connecticut Department of Banking addressed its July 17, 2024 letter to the same address. (Ex. 17.) And the Hawai'i First Amended Complaint alleges, based on a guaranty Debelov signed, that "the address of the guarantor—Cheetah X, Inc.—is 338 Spear Street #8c, San Francisco." (Mhmoud Decl. ¶ 8; Ex. 24 (CX_000105, CX_000110).)

### H. Registration, and its lapse, are beside the point

Defendants repeatedly emphasize that Cheetah X "is not registered to do business with the Secretary of State in California and its California registration lapsed and ended in 2020." (ECF 42 at 7, 14.) The argument fails three times over.

*First*, registration is not an element of general jurisdiction; the paradigm bases are incorporation and principal place of business. *Ranza*, 793 F.3d at 1069. A corporation does not escape general jurisdiction where it is at home by letting a registration lapse. Defendants' own authority holds the converse: "Registration to do business in a state is not enough to establish the corporation is at home in that state." *Kokkoros*, slip op. at 13 (citing *King v. American Family Mutual Insurance Co.*, 632 F.3d 570, 575 (9th Cir. 2011)). Registration is neither necessary nor sufficient. Plaintiff does not advance a consent-by-registration theory.

*Second*, the parenthetical Defendants offer for the assertion does not support it: they cite "Debelov Decl. ¶13, Exh. H, a true and correct copy of Pg. 1 of the SEC complaint." (ECF 42 at 7.) The first page of a complaint filed in Florida is not evidence of California registration status. Defendants do rely elsewhere on Debelov's declaration and its Secretary of State exhibit (ECF 42-1 ¶ 5 & Exh. B), and Plaintiff does not dispute that the registration lapsed — only its legal significance. *Third*, that same Exhibit B lists Cheetah X's California status as forfeited for unmet Franchise Tax Board obligations while still giving 338 Spear Street as the Principal Address. (Ex. 7.) An unpaid California tax obligation is not evidence of absence from California.

## VII. DEFENDANTS' PRIOR SWORN STATEMENTS ARE ADMISSIONS, AND JUDICIAL ESTOPPEL APPLIES IN THE ALTERNATIVE

### A. The statements are admissions of a party opponent

Each of Debelov's prior sworn statements is admissible against both Defendants as an admission of a party opponent: the two out-of-state declarations, the October 2024 deposition testimony, the verified interrogatory answers, and the verified document responses. Fed. R. Evid. 801(d)(2)(A), (D); (Exs. 1–6, 9–10). No showing about what any other court did with those statements is required; they are substantive evidence, not merely impeachment.

The verified document responses deserve particular attention. Rule 34 responses need not be verified; only interrogatory answers must be. Fed. R. Civ. P. 33(b)(3), (5). Defendants nonetheless had Debelov verify their document responses under penalty of perjury (Exs. 3–4), so every factual statement in them is his own sworn testimony — including that 1 Bluxome Street "was Cheetah X's San Fransico's [sic] office."

### B. Judicial estoppel provides an alternative ground

Judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent

position." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Three considerations govern: whether the later position is "clearly inconsistent" with the earlier one; whether the party persuaded a court to accept the earlier position; and whether the party would gain an unfair advantage. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Plaintiff addresses the second consideration directly. The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton*, 270 F.3d at 783. Plaintiff does not represent that the Southern District of Florida has yet issued a ruling resting on Debelov's "Residence and Domicile" declaration. Judicial estoppel is therefore offered as an alternative ground only, available if and when that acceptance condition is met, and the Court need not reach it.

The first and third considerations are satisfied. The positions are opposite: "I live in San Francisco, California… with my primary residence at 338 Spear St., Unit 8C" (Ex. 5 ¶ 3 (S.D. Fla., Oct. 3, 2025)) against "Defendant Debelov also lives in Florida" (this Court, July 30, 2026). The advantage sought is the one the doctrine exists to prevent. Nothing in Section V or VI depends on it.

## VIII. IN THE ALTERNATIVE, THE COURT HAS SPECIFIC JURISDICTION

### A. Defendants apply the wrong framework

Defendants' specific-jurisdiction argument rests principally on product-liability and product-distribution authority: *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021); *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017); *Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014); and *LG Chem, Ltd. v. Superior Court*, 80 Cal. App. 5th 348 (2022). In the cases they use for that point, a defendant located outside the forum sent a product into it, and the question was whether that inflow was enough. (*See* ECF 42 at 14–15.)

That framework does not fit. The question here is not whether Defendants reached into California from somewhere else, but whether they operated from California. A defendant who conducts the challenged business from inside the forum has availed itself directly.

Plaintiff is candid about the record. The scooters she purchased were not deployed in California; the agreement names rental markets in Hawai'i, Louisiana, and Florida. Her theory depends not on the scooters but on where the seller was — and the agreement identifies the seller on its face as "Cheetah X Inc (dba 'Go X'), 1 Bluxome St Suite 303, San Francisco, California 94107." (Ex. 11; ECF No. 1, Ex. A.) Defendants' verified answers confirm this was a real office, not a mail drop. (Exs. 1–4.)

*Williams v. Yamaha* illustrates the mismatch: a Japanese parent's contacts could not be established by imputing a subsidiary's absent an alter-ego showing. 851 F.3d at 1021. There is no imputation here; Debelov's California contacts are his own. *Morrill* holds only that jurisdiction cannot rest on "the fortuity of where the plaintiff resides." 873 F.3d at 1148. Plaintiff resides in Ohio and relies on no link supplied by her own residence — which is what *Walden v. Fiore* requires. 571 U.S. 277, 284–85 (2014).

**B. Debelov purposefully directed the conduct at issue from California**

Under the effects test, a defendant purposefully directs conduct at a forum by committing an intentional act, expressly aimed at the forum, causing harm the defendant knows is likely to be suffered there. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751–52 (9th Cir. 2025) (en banc). Where the defendant acts from inside the forum, availment is established more directly still. Two recent Ninth Circuit decisions control; Defendants engage with neither.

**First:** ***Briskin*** **forecloses Defendants' central premise.** Sitting en banc, the Ninth Circuit held that "express aiming" does **not** require differential targeting of the forum; a defendant need not have singled California out. 135 F.4th at 756–58. What matters is that the defendant's forum contacts are its "own choice and not random, isolated, or fortuitous." *Id.* at 758. *Briskin* expressly overruled *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), which had imposed a forum-specific-focus requirement. Defendants' refrain — that Cheetah X "does not specifically advertise and does not direct any marketing efforts toward soliciting business from California" (ECF 42 at 14) — is the argument *Briskin* rejected. Defendants nowhere cite *Briskin*.

**Second:** ***Impossible Foods*** **is close to this case, and Defendants cite it themselves.** There, Impossible X was a one-person company run by a self-described "digital nomad" who operated it from San Diego for roughly two years before relocating to Texas. 80 F.4th 1079, 1082–85 (9th Cir. 2023). The Ninth Circuit held it subject to specific jurisdiction in California because it "previously operated out of California and built its brand and trademarks there" — even though it had since left. *Id.* at 1086–89. Defendants cite *Impossible Foods* at page 11 for the general-jurisdiction paradigm and never confront its holding. Cheetah X is functionally a one-person company: Debelov holds 69.298% of its voting stock (Ex. 8 at CX_000008), and the Hawai'i complaint alleges he is its sole officer and director (Ex. 24). He ran it from San Francisco. Under *Impossible Foods*, that would suffice even if he had left — and the record shows he has not.

The following facts all come from Defendants' own materials:

1. **He ran and monitored the company from San Francisco during the relevant period.** As CEO in 2022 and 2023 he spent "one third of the time or so in San Francisco," working from his apartment there and from a co-working space Go X rented in San

Francisco in 2023. Asked whether, as CEO, he had logged into the Go X website while in San Francisco "to manage your business," he answered: "**Yes.**" (Ex. 10.)

2. **He supervised the investment platform.** "**Invest page went up under my supervision.**" Asked whether he monitored it, he answered "Yeah, sure." (Ex. 10.) Plaintiff does not contend he was physically in San Francisco on any particular day; what matters is that the page through which the investment was sold operated under the supervision of a man then living and working in San Francisco a third of the time.

3. **He solicited investors personally.** On June 29, 2023, writing from alexd@goxapp.com under the subject "URGENT: Go X LAUNCH on 6/30," he offered the "opportunity to finally invest on Go X platform: goxapp.com/invest," warned that "spots will be gone in less than 24 hours," and compared a Go X position against BROS, FB, NFLX, AMZN, Bitcoin, and the S&P 500. (Mhmoud Decl. ¶ 8; Ex. 25 (CX_000330).) He had set investor terms himself since 2020: writing on October 22, 2020, he stated that "all investors are coming at $35M valuation" and that the round was "still being done on the SAFE." (Ex. 26 (CX_000329).)

4. **He corresponded with Plaintiff directly.** Defendants verified that Debelov "did have direct email exchanges with Plaintiff at material points," identifying one he sent himself — the May 5–6, 2024 message titled "Update On your 'scooters' series" — and three further exchanges escalated to him. (Exs. 1–4; Mhmoud Decl. ¶ 18.) Plaintiff notes for accuracy that Defendants attribute the day-to-day refund correspondence to Khodor Salam in Florida; her point is that the chief executive who supervised the offering, then living in San Francisco, wrote to her himself about her investment.

5. **Cheetah X sold this same instrument to California-affiliated participants.** Defendants state that of approximately 280 participants, "Approximately 10 are California-affiliated, and Plaintiff is not one of them." (ECF 42 at 6; Exs. 1–4.) Whether Plaintiff is herself a California resident is irrelevant; she does not claim to be. That roughly ten participants are California-affiliated shows the program's reach into California was Defendants' own choice, not "random, isolated, or fortuitous." *Id.* at 758.

**C. Plaintiff's claims arise out of and relate to that conduct**

Relatedness requires no proof of causation; it is satisfied where the claims "arise out of or relate to" the forum contacts. *Ford Motor Co.*, 592 U.S. at 359. The conduct described above is Plaintiff's claims. Count I alleges Defendants sold her an unregistered security through misrepresentations; the offering page went up under Debelov's supervision, and the seller named on the agreement is a San Francisco company. Count III alleges fraud; the June 29, 2023 solicitation and the 2024 investor correspondence are the misrepresentations. Count V alleges conversion of $7,763.03 withheld from an account whose banking address was San Francisco through September 2024. (Mhmoud Decl. ¶ 17; Ex. 9 ¶¶ 2–4.) Defendants' contrary argument depends on where the scooters and Khodor Salam were (ECF 42 at 5–6, 14), but Plaintiff sues over the sale of an investment and the refusal to return her money.

**D. Reasonableness is Defendants' burden, and they have not carried it**

Once purposeful availment and relatedness are shown, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Defendants concede the allocation. (ECF 42 at 13.)

Their showing rests on the burden of litigating in California, and their own record undercuts it. Their counsel is in Los Angeles; Debelov leases an apartment in this District, holds a California driver's license, votes in California, and files California taxes; California's Secretary of State lists Cheetah X's principal address; and its DFPI has issued a desist and refrain order against Defendants. Their point that the SEC "chose to file their case against CHEETAH X in Florida rather than in California" (ECF 42 at 6) is not evidence of their own contacts: the investigating office was the SEC's San Francisco Regional Office, the file is numbered SF-04502-A, and Debelov's declaration states that "the questioning focused on whether Go X or I had any nexus to California." (Ex. 9 ¶ 7.)

## IX. THE MOTION IS UNSUPPORTED AS TO DEBELOV

The motion asks the Court to dismiss both Defendants, but contains no separately headed or developed analysis applying the individual-domicile standard to Debelov; its jurisdiction headings and subheadings address only CHEETAH X INC. Debelov appears twice: Defendants assert that "the facts also indicate that there is no personal jurisdiction over Mr. Debelov," and tell the Court to look "only secondarily to Mr. Debelov who is apparently being sued on the basis of piercing the corporate veil or alter ego doctrine." (ECF 42 at 10.)

The first is a conclusion. The second is mistaken about the complaint: Plaintiff does not sue Debelov derivatively. She sues him directly under § 10(b) and Rule 10b-5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, for fraud, and for conversion, based on his own statements and conduct. And ECF No. 37 directed supplemental briefing on jurisdiction over Debelov specifically. Defendants filed a twenty-page brief that never states the domicile standard, cites no authority on jurisdiction over a natural person, and never engages the five California facts they verified two weeks earlier.

## X. THE SUPPORTING DECLARATION CANNOT CARRY THE MOTION

A Rule 12(b)(2) motion supported by declaration rises or falls on that declaration. This one is in tension with its own declarant's prior sworn statements on every material point:

| ECF 42-1 states | Debelov's own sworn statement |
|---|---|
| No "bank accounts in California" (¶ 6) | Nine institutions listed San Francisco as the company address (2021–2023); BofA statements San Francisco through Sept. 2024 (Ex. 9) |
| No "offices… in California" (¶ 6) | Go X rented San Francisco co-working space in 2023 — "Yeah, for sure" (Ex. 10); 1 Bluxome St. "was Cheetah X's San Fransico's [sic] office" (Exs. 1–4) |
| "I lease an apartment in San Francisco… which accounts for the California address" (¶ 12) | "I live in San Francisco, California… with my primary residence at 338 Spear St., Unit 8C" (Ex. 5); "resided continuously" there since June 2011 (Ex. 6) |
| "Debelov also lives in Florida" (ECF 42 at 18) | The Florida apartment is "where my parents stay"; his own Florida lease ran only to mid-2022 (Exs. 1–4, 10) |
| "did not have any conduct or activities in California" (*id.* at 19) | As CEO, "one third of the time or so in San Francisco" in 2022–2023; worked from his apartment and a rented co-working space (Ex. 10) |
| California operations "ended in 2020" (ECF 42 at 6) | Nine institutions listing San Francisco through 2023; San Francisco office space in 2023 (Exs. 9–10) |
| Declaration omits license, voter registration, tax filings | Verified fourteen days earlier: "California driver's license… California Registered Voter… files taxes in California" (Exs. 1–4) |

Where a declaration conflicts with the declarant's own prior sworn statements, the conflict is resolved in the plaintiff's favor at this stage. *Schwarzenegger*, 374 F.3d at 800. Plaintiff asks the Court not to make credibility findings, but only to apply that standard at this stage.

## XI. DEFENDANTS WITHHELD THE JURISDICTIONAL EVIDENCE THE COURT ORDERED PRODUCED

Plaintiff does not move to compel; the Rule 37-3 window closed on July 23, 2026. (Mhmoud Decl. ¶ 14.) She raises the matter because it bears on the sufficiency of Defendants' showing. A court may appropriately permit or credit jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc*, 557 F.2d at 1285 n.1); *see Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

Every category withheld goes to a fact Defendants affirmatively deny: the 338 Spear Street tenancy file bears on paragraph 12 of their declaration, the 2021–2025 tax filings on domicile, the DFPI file on principal place of business, and the missing 223 transcript pages on Debelov's account of his California presence. The four documents this Court identified in ECF No. 34 were not produced at all. (Mhmoud Decl. ¶¶ 10–11; Ex. 21.) What was produced illustrates the problem: asked for the locations of Go X employees and contractors, Defendants produced a page captioned "Address Records of Go X Employees and Contractors" listing about fifty names with the address column entirely blank. (Mhmoud Decl. ¶ 15; Ex. 27 (CX_000313).)

Defendants' counsel acknowledged in writing that the production covers only "the majority of what you requested." (Ex. 22.) Defendants served no statement under Rule 34(b)(2)(C), produced no privilege log under Rule 26(b)(5)(A), and answered Interrogatory No. 1 only through the first quarter of 2022. An evasive or incomplete answer "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). If the Court is not prepared to deny the motion outright, it should defer ruling and direct Defendants to produce the seven categories identified in Plaintiff's July 28, 2026 letter.

**XII. CONCLUSION**

Defendants have sworn to California domicile in Florida and in Hawai'i, verified it in this case in July, and denied it to this Court in August. Their own Secretary of State filing and their own federal tax return each give a San Francisco address, and their own chief executive swore that nine financial institutions listed San Francisco as the company address throughout the period of Plaintiff's purchase, and that "my location was 'headquarters.'" (Exs. 5–9.) Their own lead authority instructs this Court to measure contacts as of January 7, 2025. Plaintiff respectfully requests that the Court deny the motion as to both Defendants; or, in the alternative, defer ruling and order Defendants to produce the withheld jurisdictional discovery, with limited supplemental briefing to follow.

Dated: August 20, 2026

Respectfully submitted,

DINA ADEL MHMOUD
Plaintiff, Pro Se
45 Erieview Plaza, Apt. #423
Cleveland, Ohio 44114
845-764-2609
dmhmoud@gmail.com